### SHEALY SMOKE v. W. L. COBB CONSTRUCTION CO., et al.

Industrial Commission.
June 14, 1949.

———o———

J. T. Watson of Oxford & Oxford, Lakeland, for claimant.

D. L. Stewart, Tampa, for defendants.

ROBERT L. HODGES, Deputy Commissioner.

At the outset of the hearing the claimant, employer and insurance carrier stipulated that Shealy Smoke was employed by the W. L. Cobb Construction Co. of Lakeland on August 26, 1948 and on that day sustained an injury to the left knee; that his disability began on August 30; that the compensation period began on September 3; that he has been paid compensation for one week covering the period from September 3 to September

10 in the sum of $22, which is all the compensation he has been paid; and that the payment was based on an average weekly wage of $46.88.

The testimony shows that claimant was injured on August 26 by accident arising out of and in the course of his employment; that he had been working in a ditch and while attempting to climb out of the ditch slipped and fell back into the ditch, striking his left knee on a shovel with which he had been working and then falling back into some water in the ditch; that he worked for the rest of that day and on the next day, which was Friday, complained to the foreman that his knee was paining him; that the pain in his knee grew progressively worse and by Wednesday of the following week he had become paralyzed so that he could not move either leg; that at the present time he is unable to work and is paralyzed from the waist down and is still unable to move his left leg, but can move his right leg just a little.

The testimony further shows that Dr. Charles Larsen of Lakeland, a general surgeon, examined him on August 30 and x-rays were taken to determine whether or not he had sustained any bone injuries. It was found that he had not. He was given diathermy treatments to his knee, which improved. By September first, however, it was ascertained that something else beside the knee injury was wrong as he started walking by throwing out his leg which suggested the presence of a neurological disease. Dr. Larsen then gave him a thorough neurological examination because of his unusual gait and found bizarre symptoms but nothing definitely suggesting a brain tumor or cord lesion. Dr. Larsen testified that he then suspected central nervous system lues or syphilis of his nervous system. Later a blood serology was made by Dr. Henry Fuller or under his direction which showed claimant to be suffering from neuro syphilis with transverse myelitis, and Dr. Larsen concurred in this diagnosis. Dr. Larsen further stated that in his opinion claimant's present condition is not due to the knee injury which he received but to the syphilis from which he is suffering, and stated that in his opinion, so far as the knee injury was concerned, claimant could have done light work on September 3 and should have been able to return to full duty within three or four weeks thereafter.

Dr. Henry Fuller of Lakeland, a specialist in internal medicine, testified that he first saw the claimant on September 5

at which time he was paralyzed in both legs, had an acute retention of urine and could not empty his bladder because of paralysis; that on that day he was entered in a hospital and x-rays were taken of the spine to determine whether there had been any traumatic injury, but the x-rays revealed no bone injury to the spine; that a thorough neurological examination was then given which revealed an almost complete severance of the spinal cord from the lower thoracic level, which the doctor attributed to the disease and not to the knee injury; that the spinal fluid was then examined which showed definitely that the claimant was suffering from neuro syphilis with transverse myelitis; that in his opinion he had been suffering from syphilitic infection for a good many years. He further testified that although claimant associated his paralysis with the injury he had received to his left knee, in his opinion there was no connection between this injury and the paralysis, but that the paralysis was caused by the neuro syphilis and that this paralysis would have occurred about the same time that it did occur even though claimant had received no injury to his knee, and that he considered the fact that the injury to claimant's knee and the paralysis occurred within about a week of each other to have been a mere coincidence.

Dr. James West of Lakeland, a general practitioner, testified that he first saw the claimant at his home on February 16, 1949 and the next day at his office when upon examination he found him to be suffering from multiple injuries to the spinal cord, most of which extended from about the 10th dorsal vertebra downward to the end of the spinal cord which had produced neurological changes and at that time he could not walk or move either lower extremity and was unable to perform ordinary bodily functions; that he found no anklyosis or reduction of the use of the joints which moved freely and that when he used electrical stimulation on his back he had certain motion which he lacked without this stimulation; that at the time of his examination he found no disease having any bearing on the injury to his knee; and that in his opinion his condition could have been traced back to the injury to his knee in August 1948. Dr. West did not take any x-rays or make a spinal puncture or make any laboratory tests to determine the existence of neuro syphilis with transverse myelitis as he did not find anything to indicate that claimant's condition was due to disease. He further testified that claimant should have physiotherapy for a period of about eight months in an effort to bridge the nerve

lesions in his back—this would be necessary before any definite conclusions could be reached as to claimant's condition from the standpoint of ultimate recovery. None of the testimony gives any definite prognosis.

From the record and testimony I find that on August 26, 1948 claimant sustained an injury to his left knee by accident arising out of and in the course of his employment resulting in temporary total disability; that such disability began on August 30 and continued for a period of five weeks; that claimant is entitled to be compensated for such disability at a rate of $22 a week; that he has been paid compensation for one week from September 3 to 10 and is entitled to compensation for four additional weeks for such temporary total disability.

I find that had it not been for the syphilitic condition from which he was suffering at the time he received the injury to his left knee, his disability from such injury would have ceased by reason of recovery on or about the first day of October 1948.

I find that his present paralytic condition is a result of the neuro syphilis with transverse myelitis from which he is found to be suffering, and did not result from the injury to his knee.

I find that the disease was not materially aggravated or accelerated by the injury to his knee resulting in disability from paralysis earlier than it would otherwise have occurred. I find that the paralysis resulted from the disease alone progressing naturally as it would have done under ordinary conditions. I accordingly find that his disability from neuro syphilis with transverse myelitis, which has resulted in paralysis, did not result from any injury by accident arising out of and in the course of his employment.

It is therefore ordered that the employer (or its insurance carrier) shall forthwith pay the claimant additional compensation at a rate of $22 a week for four weeks (from September 10 to October 8, 1948) as temporary total disability for the injury to his knee; that the employee's claim for further compensation and medical benefits by reason of his present disability resulting from neuro syphilis with transverse myelitis be, and the same is, denied; and that the employer pay directly to claimant's attorneys the sum of $50, which is found to be a reasonable attorney's fee.